THIS is an action upon the case, brought by the appellant in the court below, and in his declaration he states, that the appellee sold him a negro woman slave at the price of four hundred dollars, which the appellee represented to be sound and healthy, except the phthisic, which he represented that she had but slightly, and not to da her any great injury, knowing at the same time that his representations were false, and that she was laboring in the last stage of that disease; and that she shortly after the sale, died, having continued to labor, under it, so as to be of no value to the appellant, but great expense and trouble. On the trial of the issue of not guilty, the appellant proved that he resided in the town of Winchester, ten or twelve miles, from the residence of the appellee, where the negro was at the time of the sale, which took place in Winchester, at the house of the appellant; that at the time of the contract, the appellee represented the slave to be about nineteen or twenty years of age, black, fleshy *228 and of a middling size, large enough for any business, and on this representation the appellant agreed to purchase her at the price asked j half of which was then paid, and a note given for the residue, and a bill of sale was then prepared in the usual form, warranting the negro to be sound and healthy. When the bill of sale was read, the appellee refused to sign it, unless the phthisic was excepted ; and on being asked, he then represented that she had the phthisic slightly, but that it did not prevent her doing business. On this representation, the words “ except the phthisic" were annexed to the close of the warranty of health. The appellant next proved, that he sent forthwith a messenger for the slave to the house of the appellee j but he, the appellee, not having got home from Winchester, his wife refused to give'her up. On the return, of the messenger, the appellant found the appellee and demanded the slave or his money back. The appellee alleged thaf he had spent some of it and could not return the money, but induced the appellant again to send for the slave, which was some one or two days a ft i r the sale The appellee went with the messenger, and the wife of the appellee remonstrated against sending the slave on account of her sickness. She was, however, taken home; but was found unable to travel there upon foot, and unable to work, and lingered and died with the complaint in two or three weeks Other evidence was given, conducing to the establishment of fraud on one side, and to disprove it on the other. On motion of the defendant below, now appellee, the court instructed the jury “ that it was the duty of the plaintiff, now appellee, to have used due diligence in discovering any defect which might belong to the negro." The propñety of this instruction, is now presented for our decision.
rJ?iiat every person purchasing an article or commodity which may be defective, may be bound to espy out any visible defect easy to be discovered, when the article is examined, and that the seller may not be responsible for such defects, will not be contested. But even .then, if the seller uses any artifice, to disguise such defects, or misrepresents them, or by false statements induces the purchaser to waive the defect and make the purchase, the defect notwithstanding, the seller may be made responsible.
*229 It cannot, however, be contended, that the phthisic is a disease of that palpable character, and especially the stage to which it has progressed, that it might and ought to be taken notice of by a purchaser; and its existance, except when its effects are directly visi. bie, which is not at all times the case, must frequently be a matter resting on the disclosure of the seller ; and more particularly whether it is inveterate, or has progressed to a dangerous stage, must be a matter best known to the one who possesses and employs the subject of the disease. And for representations not true, on this subject, lie must be responsible For these reasons the instruction cannot be sustained, as it was calculated to mislead the jury, by informing them that it was the duty of the appellant to have investigated any defect, whether palpable or not, before he purchased.
Thus far, the instruction is shown to be improper, even if the negro had been present and submitted tq the inspection of the purchaser. This, however, was not the case in the present instance. The property was distant, and evidently purchased on the representations of the appellee, without inspection, and if so purchased, he was certainly responsible for all representations which he might make, knowing the facts to be otherwise. He was bound to- state facts truly, and ought not to rely on the too great credulity of the appellant to excuse him for untruths. If, then, the instruction, which is very equivocal, intended to convey the idea that he would not be liable for falsehoods if the appellant did not use due diligence to visit and inspect the slave; or that having failed to visit and inspect the slave, the appellee could not be liable, (which is an inference that may be drawn from it,) it is still more objectionable. The fact then is, that the instruction, under the circumstances of this case, was, to say the least of it, inapplicable, ami as far as it could apply, was calculated to mislead the jury, and consequently^ it ought never to have been given.
The only remaining question, respects the decision qf that court in overruling the motion for a new trial. But as the cause must be reversed for an error in its progress, it is not neeessary that we should say any thing on the weight of evidence, which may be much varied on another hearing.
*230 The judgment must be reversed with costs, and the verdict set aside, and the cause remanded tor new proceedings, not inconsistent with this opinion.